UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSICA ORTIZ, individually and as successor in interest to RICARDO ORTIZ, deceased; S.S., a minor, by and through her guardian ad litem, JESSICA ORTIZ; and L.O., a minor, by and through her guardian ad litem, Jessica Ortiz,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>COUNTY OF TRINITY, CALIFORNIA, a local government entity; DEPUTY BEN SPENCER, in his individual capacity; SHERIFF TIM SAXON, in his individual capacity, and DOES 1-40, inclusive,<br><br>　　　　Defendants. | No.  2:21-cv-02248-JAM-AC<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** |

　　　　I.　　FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND[1]

　　This case involves a property dispute that resulted in the fatal shooting of Ricardo Ortiz.  First Am. Compl. ("FAC") ¶ 89,

---

[1] This motion was determined to be suitable for decision without oral argument.  E.D. Cal. L.R. 230(g).  The hearing was scheduled for April 19, 2022.

1

ECF No. 12.  On the afternoon of December 10, 2020, Deputy Spencer received a call via dispatch to report to a residential property in Hayfork, California (the "subject property"), due to a dispute between Joseph Nieves and Ortiz.  Id. ¶ 19.  Upon arrival, Deputy Spencer spoke with Nieves who informed him he was the owner of the subject property and was running a marijuana cultivation operation.  Id. ¶ 21.  Nieves also conveyed that he had recently terminated Ortiz who was claiming entitlement to a portion of the subject property.  Id. ¶¶ 22, 24.  Nieves told Deputy Spencer that if Ortiz returned to the subject property and Deputy Spencer was not there it would get violent.  Id. ¶ 25.

Deputy Spencer agreed to contact Ortiz and left the subject property.  Id. ¶ 28.  However, before he was able to get in touch with Ortiz, he received word from dispatch that Ortiz had arrived at the subject property.  Id. ¶ 29.  Deputy Spencer returned to the subject property where he met with Ortiz.  Ortiz told Deputy Spencer that Nieves did not in fact live at the subject property but rather, he (Ortiz) had been living there for over a year.  Id. ¶¶ 30, 31.  Deputy Spencer then advised both Nieves and Ortiz that this was a civil issue and Ortiz agreed to leave the subject property and pursue a legal remedy in court.  Id. ¶¶ 34, 35.

The next morning, Ortiz contacted the Trinity County Sheriff's Office and requested help removing the items he owned from the subject property.  Id. ¶ 45.  Shortly thereafter, Deputy Spencer returned Ortiz's call.  Id. ¶ 46.  Ortiz explained that Nieves was not allowing him into the subject property to retrieve his possessions and that Nieves had a gun.  Id. ¶¶ 47, 49.  Deputy Spencer informed Ortiz that if he was a resident of the

subject property, he had every right to be there, but advised Ortiz against going to the subject property alone and agreed to perform a civil standby to assist Ortiz in retrieving his possessions. Id. ¶¶ 48, 51, 53.

When Deputy Spencer first arrived at the subject property, he explained to Nieves that if Ortiz had been living on the subject property, Nieves could not evict him without an eviction notice. Id. ¶ 63. Nieves, however, insisted he would not open the gate for Ortiz and reiterated things may "get bad." Id. ¶ 67. Deputy Spencer left the subject property and spoke with off-duty Sergeant Cavalli about the situation, who advised him it was a crime for a landlord to lock a resident from a property without an eviction notice. Id. ¶¶ 69, 71, 72.

Deputy Spencer returned to the subject property to conduct a civil standby for Ortiz. Id. ¶ 73. Ortiz and Deputy Spencer met at the locked gate of the subject property and shortly thereafter, Nieves arrived. Id. ¶¶ 77, 78. Deputy Spencer again explained to Nieves that he was not allowed to lock Ortiz out of the subject property. Id. ¶ 79. A verbal argument ensued between Nieves and Ortiz, after which, Deputy Spencer warned that if things became physical, someone may go to jail. Id. ¶ 80. Nieves eventually agreed to unlock the gate and Ortiz drove up to the residence to collect his possessions. Id. ¶¶ 82, 83. Once Ortiz made it into the residence, Deputy Spencer left the subject property without telling Ortiz, leaving Nieves unattended. Id. ¶¶ 84-86. With no one securing him at the gate, Nieves drove up to the residence to confront Ortiz. Id. ¶ 88. Less than half an hour later Nieves shot and killed Ortiz. Id. ¶ 89.

Decedent's wife Jessica Ortiz brought this action, individually and as successor in interest to her husband, along with their minor children, L.O. and S.S.[2], asserting claims for: (1) wrongful death against Deputy Spencer; (2) wrongful death against Trinity County; (3) a § 1983 claim against Deputy Spencer for violation of Decedent's Fourteenth Amendment rights; (4) a Monell claim against Trinity County; (5) a supervisory liability claim against Sheriff Saxon; and (6) a request for punitive damages as to Deputy Spencer and Sheriff Saxon. See generally FAC.

The County and Sheriff Saxon now move to dismiss the § 1983 claims against them, counts four and five, as well as the request for punitive damages against Sheriff Saxon. Mot. to Dismiss ("Mot.") at 2, ECF No. 13. Plaintiffs opposed this motion, Opp'n, ECF No. 16, to which Defendants replied. Reply, ECF No. 17. For the reasons set forth below this motion is granted.

## II. OPINION

### A. Legal Standard

A Rule 12(b)(6) motion challenges the complaint as not alleging sufficient facts to state a claim for relief. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss [under 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)

---

[2] L.O. is the biological child of Decedent. S.S. is the minor daughter of Decedent's spouse who resided with Decedent for more than 180 days preceding his death and was dependent upon him for at least half of her care and financial support. FAC ¶¶ 6, 7.

4

(internal quotation marks and citation omitted).  While "detailed factual allegations" are unnecessary, the complaint must allege more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Id.  "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009).

### B. Analysis

A public entity is subject to liability under § 1983 only when a violation of a federally protected right can be attributed to: (1) an express municipal policy, such as an ordinance, regulation or policy statement, Monell v. New York City Dept. of Soc. Servs., 436 U.S. 658, 691 (1978); (2) a "widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a custom or usage' with the force of law", City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988), (3) the decision of a person with "final policymaking authority," id. at 123; or (4) inadequate training that is deliberately indifferent to an individual's constitutional rights, City of Canton v. Harris, 489 U.S. 378, 388 (1989).

Plaintiffs clarify that they are proceeding on a failure to train theory of liability against the County and Sheriff. Opp'n at 6-8, 12-13.  Accordingly, the Court does not address Defendants' arguments as to the other theories of liability. See Mot. at 9-14.  The parties agree that a municipality's

failure to train its employees may create § 1983 liability where the "failure to train amounts to deliberate indifference to the rights of persons with whom the [employee's] come into contact." Connick v. Thompson, 563 U.S. 51, 61 (2011).  "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train."  Id. at 62.  However, "in a narrow range of circumstances," a pattern of similar violations may not be necessary where violations of constitutional rights are patently obvious or the "highly predictable consequence" of a failure to train.  Id. at 63.  Relatedly, "[a] supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates[.]"  Watkins v. City of Oakland, 145 F.3d 1087, 1093 (9th Cir. 1998).

Defendants argue Plaintiffs have not alleged sufficient facts to state a plausible failure to train claim against either the County or Sheriff.  Mot. at 11-12, 14-16.  The Court agrees. Plaintiffs allege the following facts to support their claims: (1) Deputy Spencer agreed to perform a civil standby for the benefit of Ortiz, FAC ¶ 73; (2) once Ortiz entered the subject property Deputy Spencer left and abandoned the civil standby without telling Ortiz he was leaving, id. ¶¶ 84-86; (3) with no one securing the gate, Neives drove to the residence, confronted Oritz, and shot him, id. ¶¶ 88,89; (4) Deputy Spencer's actions violated Trinity County Sheriff's Department policy 428.4.1 which requires the deputy performing a civil standby "accompany the person to the location of the property" and prohibits

6

ordering the other party to allow entry or the removal of any items, id. ¶¶ 143, 144; (5) the County and Sherriff Saxon failed to adequately train, monitor, and supervise Deputy Spencer with respect to how to perform civil standbys, id. ¶¶ 127, 142; and (6) the County and Sheriff Saxon were aware of the deficiency in training but failed to correct it, which amounted to deliberate indifference, id. ¶¶ 137, 153.

Plaintiffs, relying on City of Canton v. Harris, contend these allegations are sufficient. Opp'n at 6-13. Plaintiffs point out that in City of Canton, the Supreme Court left open that there may be some circumstances in which "'the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights' that a factfinder could find deliberate indifference to the need for training without a pattern of previously occurring constitutional violations." Opp'n at 7 (quoting City of Canton, 489 U.S. at 390). Nevertheless, Plaintiffs must still "offer factual support for their allegations of defective training[.]" Hyde v. City of Willcox, 23 F.4th 863, 874 (9th Cir. 2022). As the Ninth Circuit recently noted, although "deliberate indifference can be inferred from a single incident when the unconstitutional consequences of failing to train are patently obvious an inadequate training policy itself cannot be inferred from a single incident." Id. at 874-875. But Plaintiffs here ask to the Court to do exactly that – infer from this single incident that the County failed to train on civil standbys. See Opp'n at 12. Plaintiffs allege no facts regarding the training of officers, just the conclusory allegation that Deputy Spencer

7

"was not adequately trained [. . .] with respect to how to perform civil standbys." FAC ¶¶ 125, 132. This is insufficient to state a claim for failure to train, as "[o]therwise, a plaintiff could effectively shoehorn any single incident with no other facts into a failure-to-train claim against the supervisors and the municipality." Hyde, 23 F.4th at 875. Accordingly, the Court grants Defendants' motion to dismiss the fourth cause of action for Monell liability against the County, the fifth cause of action for supervisory liability against Sheriff Saxon, and the dependent request for punitive damages against Sheriff Saxon without prejudice. See Leadsinger, Inc. v. BMG Music Pub., 512 F.3d 522, 532 (9th Cir. 2008) (explaining leave to amend should be freely given unless there has been undue delay, bad faith, repeated failure to cure deficiencies, it would cause undue prejudice to the opposing or would be futile); Copelan v. Infinity Ins. Co., 359 F.Supp.3d 926, 930 (C.D. Cal. 2019) (punitive damages request fails when underlying claims fail).

### III. SANCTIONS

Defendants exceeded the Court's 15-page limit on motion memoranda. See Mot.; see also Order re Filing Requirements ("Order"). Violations of the Court's standing order require the offending counsel, not the client, to pay $50.00 per page over the page limit to the Clerk of Court. Order at 1. Moreover, the Court will not consider arguments made past the page limit. Id. Defendants' motion exceeded the page limit by two pages. Accordingly, Defendants' counsel must send a check payable to the

Clerk for the Eastern District of California for $100.00 no later than seven days from the date of this order.

## IV.   ORDER

For the reasons set forth above, the Court GRANTS WITHOUT PREJUDICE Defendants' motion to dismiss.  If Plaintiffs elect to amend their complaint, they should file their Second Amended Complaint within twenty days (20) of this Order.  Defendants' responsive pleadings are due within twenty days (20) thereafter.

IT IS SO ORDERED.

Dated: June 3, 2022

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE