UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Jessica Ortiz, et al., | No. 2:21-cv-02248-KJM-AC |
| Plaintiffs, | ORDER |
| v. | |
| County of Trinity, et al., | |
| Defendants. | |

For the second time, defendants move to dismiss plaintiffs' *Monell* and supervisory liability claims against the County of Trinity and Sheriff Tim Saxon, as well as punitive damages allegations against Saxon. For the reasons below, the court **grants** defendants' motion to dismiss **without leave to amend**.

**I.    BACKGROUND**

The previous presiding judge summarized plaintiffs' factual allegations in his prior order. *See* Prev. Order at 1–4, ECF No. 24. In brief, Deputy Ben Spencer from Trinity County Sheriff's Department agreed to perform a civil standby for Ricardo Ortiz in order to help Ortiz retrieve his personal items from Joseph Nieves's residence. *Id.* at 3. Sgt. Cavalli advised Spencer it was a crime for a landlord (Nieves) to lock a resident (Ortiz) from a property without an eviction notice. *Id.* When Ortiz and Spencer arrived at Nieves's residence, Spencer ordered Nieves to unlock the residence's gate. *Id.* Once Ortiz entered the residence, however, Spencer left the premises

1

without telling Ortiz, leaving Nieves unmonitored. *Id*. Nieves then confronted Ortiz and fatally shot him. *Id*. Plaintiffs, surviving family members of Ortiz, brought this lawsuit, asserting claims for: (1) wrongful death against Spencer; (2) wrongful death against the County; (3) a § 1983 claim against Spencer for violation of Ortiz's Fourteenth Amendment rights; (4) a *Monell* claim against the County; (5) a supervisory liability claim against Saxon; and (6) a request for punitive damages as to Spencer and Saxon. *Id*. at 4. For their *Monell* and supervisory liability claims, plaintiffs relied on a failure-to-train theory. *Id*. at 5.

In February 2022, defendants moved to dismiss plaintiffs' *Monell* and supervisory liability claims against the County and Saxon, as well as punitive damages allegations against Saxon. *See* Prev. Mot., ECF No. 13. The court granted the motion because "[p]laintiffs allege[d] no facts regarding the training of officers, just the conclusory allegation that Deputy Spencer 'was not adequately trained . . . with respect to how to perform civil standbys.'" Prev. Order at 7–8 (citing *Hyde v. City of Willcox*, 23 F.4th 863, 874–75 (9th Cir. 2022) and *Copelan v. Infinity Ins. Co*., 359 F. Supp. 3d 926, 930 (C.D. Cal. 2019)). Following the Ninth Circuit decision in *Hyde*, the prior order made clear the County's inadequate training policy cannot be inferred from a single incident, or the circumstances of this one case. *Id*. at 7 (citing 23 F.4th at 874–75).

In the operative complaint, plaintiffs have added the following allegations. Spencer was hired by the Trinity County Sherriff's Department with no prior experience as a law enforcement officer. Second Am. Compl. (SAC) ¶ 131, ECF No. 30. But the County and Saxon did not train Spencer about the Department's policies related to civil standbys, and they never assessed whether Spencer read or understood those policies. *Id*. ¶¶ 132–34. Despite Spencer's lack of training or assessment, the County and Saxon permitted Spencer to perform a civil standby for Ortiz. *Id*. ¶ 138. Spencer left the premises before Ortiz completed retrieving his belongings, which violated the policies, leading to Nieves's fatal shooting of Ortiz. *Id*. ¶¶ 84–89. The County and Saxon never reprimanded Spencer for the incident. *Id*. ¶ 181. For their *Monell* and supervisory liability claims, plaintiffs now rely on both failure-to-train and ratification theories. *Id*. ¶¶ 125–89.

As noted, defendants move to dismiss plaintiffs' *Monell* and supervisory liability claims against the County and Saxon, as well as punitive damages allegations against Saxon. *See* Mot., ECF No. 34. Plaintiffs oppose. *See* Opp'n, ECF No. 35. Defendants have replied. Reply, ECF No. 37. The court submitted the matter without a hearing. Min. Order, ECF No. 40.

The court requested supplemental briefing from the parties regarding whether defendants violated plaintiffs' constitutional rights in the first instance. Order, ECF No. 43. The parties have fully briefed this issue. Suppl. Br., ECF No. 44; Am. Suppl. Opp'n, ECF No. 46; Suppl. Reply, ECF No. 47.

## II.  LEGAL STANDARD

A party may move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The motion may be granted if the complaint lacks a "cognizable legal theory" or if its factual allegations do not support a cognizable legal theory. *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)). The court assumes all factual allegations are true and construes "them in the light most favorable to the nonmoving party." *Steinle v. City & County of San Francisco*, 919 F.3d 1154, 1160 (9th Cir. 2019) (quoting *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995)). If the complaint's allegations do not "plausibly give rise to an entitlement to relief," the motion must be granted. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

A complaint need contain only a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), not "detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). But this rule demands more than unadorned accusations; "sufficient factual matter" must make the claim at least plausible. *Iqbal*, 556 U.S. at 678. In the same vein, conclusory or formulaic recitations of elements do not alone suffice. *Id.* (citing *Twombly*, 550 U.S. at 555). This evaluation of plausibility is a context-specific task drawing on "judicial experience and common sense." *Id.* at 679.

### III. ANALYSIS

Although plaintiffs sufficiently allege a constitutional violation committed by Spencer, their factual allegations still do not support *Monell* and supervisory liability claims against the County and Saxon.

#### A. Constitutional Violation

"[T]he general rule is that the Fourteenth Amendment does not impose a duty on government officers to protect individuals from third parties." *Morgan v. Gonzales*, 495 F.3d 1084, 1093 (9th Cir. 2007). This is because the "Constitution is a charter of negative liberties; it tells the state to let people alone; it does not [generally] require . . . the state to provide services, even so elementary a service as maintaining law and order." *Bowers v. DeVito*, 686 F.2d 616, 618 (7th Cir. 1982). But there are two exceptions to this general rule. "First, a special relationship between the plaintiff and the state may give rise to a constitutional duty to protect." *Martinez v. City of Clovis*, 943 F.3d 1260, 1271 (9th Cir. 2019). "Second, the state may be constitutionally required to protect a plaintiff that it affirmatively places . . . in danger by acting with deliberate indifference to a known or obvious danger." *Id.* (internal quotations omitted). Plaintiffs bring their claims under the second exception, i.e., a state-created danger claim. *See generally* Am. Suppl. Opp'n.

For a state-created danger claim, plaintiffs must plead: (1) the officer's affirmative actions created or exposed them to "an actual, particularized danger" that plaintiffs would not otherwise have faced; (2) the injury plaintiffs suffered was foreseeable; and (3) the officers were "deliberately indifferent to the known danger." *Martinez*, 943 F.3d at 1271. Below, the court discusses only the first element, as defendant does not argue plaintiffs insufficiently pled the second and third elements. *See generally* Suppl. Br.

Here, plaintiffs have plausibly pled Spencer's affirmative action, i.e., his broken promise to perform a civil standby and his command toward Nieves to unlock the gate, which exposed Ortiz to a danger he otherwise would not have faced. According to the operative complaint, Ortiz communicated to Spencer that Ortiz would not enter Nieves's property alone. SAC ¶¶ 51–52. It was Spencer who ordered Nieves to open the gate so Ortiz could enter the residence.

*Id*. ¶¶ 79, 82.  Ortiz then entered Nieves's residence, even though he knew Nieves was dangerous, because Spencer promised to perform a civil standby.  *Id*. ¶¶ 83–85.  Spencer, however, left the premises, allowing Nieves to fatally shoot Ortiz.  *Id.* ¶¶ 85–89.  Although defendants argue Spencer never represented he would remain at the scene while Ortiz retrieved his personal items, *see* Suppl. Reply at 4, plaintiffs allege "Spencer agreed to perform a civil standby to assist [Ortiz] in retrieving his property from the subject property," SAC ¶ 53.  To the extent defendants dispute the scope of the agreed-upon civil standby, that is a factual issue better left for summary judgment.  At this motion to dismiss stage, the court assumes all factual allegations to be true; construing those factual allegations in the light most favorable to plaintiffs, they have sufficiently pled that Spencer's broken promises induced Ortiz to face a danger he otherwise would not have faced.  *See Steinle*, 919 F.3d at 1160.

Defendants also argue Spencer's broken promises are insufficient to establish a state-created danger claim, relying on this court's decision in *Wormuth v. Lammersville Union Sch. Dist*.  Suppl. Reply at 4 (citing 305 F. Supp. 3d 1108 (E.D. Cal. 2018)).  In *Wormuth*, the court found allegations that a school principal's failure to help a teacher supervise an aggressive student, despite promising to do so, were "an attempt to redefine passive inaction as action that is affirmative." 305 F. Supp. 3d at 1122.  *Wormuth* is distinguishable from this case.  Unlike here, the principal in *Wormuth* allegedly made his promise to a third-party, the teacher, and did not induce the plaintiff (student) to act in a way that they would otherwise not have.  *See id.*

Rather, this case is more akin to the Ninth Circuit decision in *Kennedy v. City of Ridgefield*, where the officer promised to notify the plaintiff before contacting an alleged child molester about the plaintiff's allegations so the plaintiff could have an opportunity to protect her family from the molester's violent response to the news.  439 F.3d 1055, 1063 (9th Cir. 2006).  The officer broke that promise and contacted the molester without notifying the plaintiff.  *Id*. at 1058.  The molester then shot the plaintiff and her husband.  *Id. Kennedy* found the officer affirmatively created a danger when he notified the molester of the plaintiff's allegations without warning her as promised.  *See id*. at 1063.  Similarly, Spencer allegedly ordered Nieves to open the gate for Ortiz and induced Ortiz to enter Nieves's residence without fully performing the civil

standby for Ortiz as promised. SAC ¶¶ 50–53, 79, 82–89. Although defendants argue Spencer ordered Nieves to open the gate at Ortiz's behest, Suppl. Br. at 5, this aspect of what happened does not make a difference in light of *Kennedy*. Ortiz conditioned his request on Spencer's promise to perform a civil standby, similarly to the *Kennedy* plaintiff's request to investigate the molester on the condition the plaintiff was notified before the officer contacted the molester. Because Spencer allegedly broke his promise and placed Ortiz in danger, plaintiffs have alleged a viable state-created danger claim against Spencer.

Finally, defendants argue no constitutional violation occurred because Ortiz voluntarily entered Nieves's residence even though he knew the potential danger, relying on the Ninth Circuit decision in *Johnson v. City of Seattle*. Suppl. Br. at 3–4 (citing 474 F.3d 634 (9th Cir. 2007)). But in a subsequent decision, the Ninth Circuit clarified *Johnson* turned on whether an officer engaged in "affirmative conduct," not whether a plaintiff knew of the potential danger: "Had the officers in *Johnson* engaged in affirmative conduct akin to directing someone involuntarily into dangerous conditions (as the Officers did here), they would have been liable under the state-created danger doctrine." *Hernandez v. City of San Jose*, 897 F.3d 1125, 1138 (9th Cir. 2018). As discussed above, Spencer's broken promise to fully perform a civil standby and his order to Nieves to unlock the gate, which actions induced Ortiz to enter Nieves's residence, were "affirmative conduct akin to directing someone involuntarily into dangerous conditions." *See id*. Thus, *Johnson* also is distinguishable.

For the reasons above, defendants have not shown plaintiffs have insufficiently pled a state-created danger claim under § 1983, and the court will not grant defendant's motion to dismiss on that ground.

### B. *Monell* and Supervisory Liability Claims

Although plaintiffs allege a constitutional violation under § 1983, as the court discussed in its prior order, municipalities are responsible only for their unlawful "policy or custom" and "cannot be held liable [for the actions of their employees] . . . on a *respondeat superior* theory." *Monell v. Dept. of Soc. Servs of City of New York*, 436 U.S. 658, 691 (1978); Prev. Order at 5. Relatedly, "[a] supervisor can be liable in his individual capacity for his own culpable action or

6

inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation . . . ; or for conduct that showed a reckless or callous indifference to the rights of others." *See Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998).  For both *Monell* and supervisory liability claims, plaintiffs must show municipal defendants acted in a deliberate or reckless indifference to the rights of others.  Prev. Order at 5–6; *Hyde*, 23 F.4th at 874.  As noted, plaintiffs rely on failure-to-train and ratification theories for their *Monell* and supervisory liability claims against the County and Saxon.  SAC ¶¶ 125–89; *see also Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 602–03 (9th Cir. 2019) (stating municipal "policy or custom" under *Monell* can be shown through a failure to train or ratification); *Watkins*, 145 F.3d at 1093 (same for supervisory liability claims).  For the reasons below, plaintiffs cannot proceed on either theory.

For their failure-to-train theory, plaintiffs continue to solely rely on the circumstances of this case, *see* SAC ¶¶ 147, 149, but as the prior order made clear, the court cannot infer an inadequate training policy from this single incident, *see Hyde*, 23 F.4th at 875.  Indeed, "[t]hat a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390–91 (1989).  Plaintiffs argue defendants' "deliberate indifference" can be inferred from a single incident.  Opp'n at 9–13.  But "[w]hile deliberate indifference can be inferred from a single incident when 'the unconstitutional consequences of failing to train' are 'patently obvious,' an inadequate training policy itself cannot be inferred from a single incident." *Hyde*, 23 F.4th at 874–75 (internal citations omitted).  Accordingly, plaintiffs still have not plausibly pled defendants had an inadequate training policy.

Plaintiffs also argue Cavalli's inadequate supervision of Deputy Spencer's civil standby was another incident demonstrating the County's inadequate training policy.  Opp'n at 13 n.4.  The court disagrees.  Accepting plaintiffs' argument would mean "a plaintiff could effectively shoehorn any single incident with no other facts into a failure-to-train claim against the supervisors and the municipality." *Hyde*, 23 F.4th at 875.  Plaintiffs concede the applicable training for Spencer and Cavalli would have been different for each, as one is "at the level of a

patrol deputy" and the other "at a supervisory level." SAC ¶ 147. At the same time, plaintiffs argue "[t]he [operative complaint] does not ask the Court to infer that there was inadequate training. On the contrary, [the complaint] now *directly alleges* Deputy Spencer was not trained and allowed to patrol alone." Opp'n at 13 (emphasis in original); *see also* SAC ¶¶ 131–140. But such conclusory allegations alone do not render plaintiffs' *Monell* and supervisory liability claims plausible. *See AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (citing *Twombly* and *Iqbal*).

Moreover, plaintiffs' ratification theory cannot proceed. "For there to be ratification, there must be 'something more' than a single failure to discipline or the fact that a policymaker concluded that the defendant officer's actions were in keeping with the applicable policies and procedures." *Kong Meng Xiong v. City of Merced*, 2015 WL 4598861, at *29 (E.D. Cal. July 29, 2015). Because plaintiffs rely solely on the defendants' failure to discipline Spencer, *see* SAC ¶ 181, they have insufficiently pled the County or Saxon ratified Spencer's conduct.

At this point, after two rounds of motion practice, the court concludes plaintiffs do not possess facts sufficient to support their *Monell* and supervisor liability claims against the County and Saxon. The court thus **grants** defendants' motion to dismiss these claims **without leave to amend**. *See DCD Programs, Ltd. V. Leighton*, 833 F.2d 183, 186 n.3 (9th Cir. 1987) ("[A] district court's discretion over amendments is especially broad 'where the court has already given a plaintiff one or more opportunities to amend his complaint . . . .'") (quoting *Mir v. Fosburg*, 646 F.2d 342, 347 (9th Cir. 1980)). The court also **dismisses without leave to amend** the punitive damages allegations against Saxon. *See Copelan*, 359 F. Supp. 3d at 930.

**IV.     CONCLUSION**

For the reasons above, the court **grants** defendants' motion to dismiss plaintiffs' *Monell* and supervisory liability claims against defendants County of Trinity and Sheriff Saxon, as well as the punitive damages allegations against Sheriff Saxon, **without leave to amend.**

The balance of plaintiffs' claims may proceed. The Status (Pretrial Scheduling) Conference remains scheduled for February 9, 2023, with the filing of an updated joint status report due fourteen days prior.

1       This order resolves ECF No. 34.

2       IT IS SO ORDERED.

3    DATED:  January 10, 2023.

_____
CHIEF UNITED STATES DISTRICT JUDGE